1
2
3
4              IN THE UNITED STATES DISTRICT COURT
5             FOR THE NORTHERN DISTRICT OF CALIFORNIA
6

7   METROPOLITAN TRANSPORTATION                    No. C-06-2302 MMC
    COMMISSION,
8                                                  **ORDER GRANTING PLAINTIFF'S**
                    Plaintiff,                     **MOTION FOR JUDGMENT ON THE**
9        v.                                        **PLEADINGS AND TO DISMISS**
                                                   **COUNTERCLAIMS; AFFORDING**
10  MOTOROLA, INC.,                                **DEFENDANT LEAVE TO AMEND**
                                                   **ANSWER AND COUNTERCLAIMS**
11                  Defendant
12  _____/

13          Before the Court is plaintiff Metropolitan Transportation Commission's ("MTC") "Rule

14  12(c) Motion for Judgment of its Complaint on the Pleadings and Rule 12(b)(6) Motion to

15  Dismiss Motorola's Counterclaims," filed August 22, 2006.  Defendant Motorola, Inc.'s

16  ("Motorola") has filed opposition, to which MTC has replied.  Having considered the papers

17  filed in support of and in opposition to the motion, the Court rules as follows.[1]

18                              **BACKGROUND[2]**

19          On June 25, 1999, MTC and Motorola entered into the Translink Contract

20  ("Contract"), under which Motorola promised to design, build, operate, and maintain the

21

22  _____

23          [1]By order filed October 11, 2006, the Court took the matter under submission.

24          [2]The following factual allegations, assumed true for purposes of the instant motion,
    are taken from Motorola's Answer and Counterclaims ("Ans.").  Where the Court has cited
25  to the complaint, such citation is provided to reference an allegation by MTC that Motorola
    has either admitted or denied.  Additionally, the Court has quoted from the Contract, a
26  change order thereto, a letter to MTC from Motorola, and a memorandum to MTC from its
    Executive Director; such documents are properly considered in light of Motorola's having
27  alleged the contents of such documents in its pleadings, and no party having challenged
    the authenticity of any of the copies submitted. See Parrino v. FHP, Inc., 146 F. 3d 699,
28  705-06 (9th Cir.), cert. denied, 525 U.S. 1001 (1998) (holding "district court ruling on a
    motion to dismiss may consider documents whose contents are alleged in a [pleading] and
    whose authenticity no party questions").

United States District Court
For the Northern District of California

"Translink Project," a unified collection and transfer system for transit operators in the San Francisco Bay Area.  (See Ans. ¶¶ 6-7, 43.)  Specifically, the Contract requires the "Contractor," i.e., Motorola,[3] to "perform all design and software development services required by the Contract," (see Compl. Ex. A ¶ 1.6.1), to "build, test, and implement" the fare system, (see id. ¶ 1.6.2), and to "perform all operation and maintenance services" for the fare system," (see id. ¶ 1.6.3).  Additionally, the Contract requires Motorola to provide a letter of credit, in the amount of $3,000,000 and to remain in effect until Motorola "achieves Final Acceptance of Phase II," whereupon the letter of credit "may be reduced" to $1,500,000, (see id. ¶ 3.1);[4] the Contract further requires Motorola to provide "Performance and Payment Bonds," each such bond in the amount of $40,000,000, (see id. ¶ 3.2).

The Contract also provides that Motorola may "assign or delegate all or any part of its obligations" if it complies with the provisions of Chapter 12 of the Contract, (see id. ¶ 17.6; see also id. ¶¶ 12-12.7), which provisions include the requirement that Motorola be "fully responsible" for the work of any subcontractor, (see id. ¶ 12.2).  Assignment or delegation of obligations "shall be ineffective to relieve [Motorola] of its responsibility for the [w]ork assigned or delegated, unless MTC, in its sole discretion, has approved such relief from responsibility."  (See id. ¶ 17.6.)

At the time the Contract was awarded to Motorola, Motorola's prime subcontractor was ERG Transit Systems, Inc. ("ERG").  (See Ans. ¶ 10.)  In or about March 2001, Motorola "announced that it was exiting the transit smartcard business" and would no longer have the "technical and professional capacity" to provide transit smartcard services.  (See id. ¶ 44.)  MTC knew about Motorola's exit from the transit smartcard business and stated no objection.  (See id. ¶ 33.)  Also, in or about March 2001, ERG took over performance of Motorola's obligations and duties under the Contract, (see id. ¶¶ 45, 46),

---

[3]The Contract defines "Contractor" as "[t]he party selected as a result of the Translink FPS [Fare Payment System] Request for BAFO [Best and Final Offer] who enters into the Contract to Design Build Operate and Maintain the FPS."  (See Compl. Ex. A at page x.)  The party so "selected" was Motorola.  (See Ans. ¶ 43.)

[4]"Phase II" is not yet complete.  (See Ans. ¶¶ 84, 86(ii).)

1    and, on or about July 26, 2002, Motorola "informed" MTC that "ERG was doing all the work

2    under the [ ] Contract and that Motorola had no direct financial interest in the project." (See

3    id. ¶ 48.)

4           On September 9, 2002, Motorola and ERG sent a joint letter to Motorola, (see id.

5    ¶ 11), in which they requested MTC's consent to Motorola's assigning the Contract to ERG,

6    (see Pl.'s Mot. Ex. 2).  The letter, in relevant part, stated:

7

8           Motorola remains in the prime contractor role, without change in its
            obligations to the MTC under the project agreement, until such time as the
            MTC has agreed to grant consent to assign the current contract from
9           Motorola to ERG.  ERG has generally agreed to perform Motorola's duties
            and obligations under the project agreement as agent for Motorola to the
10          extent permitted by law and [the] contract, subject to certain supervision by
            Motorola.  In the specific case of the MTC contract, Motorola relies on ERG to
11          deliver all MTC contract deliverables.  ERG has provided various financial
            guarantee vehicles to Motorola, in line with the MTC contract requirements,
12          as part of its agreement to perform the MTC contract responsibilities as
            Motorola's agent.

13
            As you are aware, Motorola announced its exit from the smartcard business
14          segment last year due to required business priority and fiscal management.
            Motorola has also sold certain smartcard business relationships, equipment
15          and technology licenses associated with its dual-mode, smartcard design and
            manufacturing business to ERG.  ERG is now technologically equipped to
16          handle all aspects of the fare collection contract with the MTC.  By this letter,
            ERG represents to the MTC that it is financially capable of handling all
17          aspects of the MTC contract.  Assignment of the contract to ERG would
            provide the MTC with a direct contractual relationship with ERG.  This would
18          support the economic and practical efficiencies of the project for all of the
            parties and facilitate development of Phase II of the project and allow for the
19          direct negotiation of changes to the current agreement with ERG.

20   (See id.)

21          MTC "never formally responded in writing" to the September 9, 2002 request for

22   approval of the requested assignment, (see Ans. ¶ 52), and has not otherwise stated in

23   writing or orally whether MTC will consent to assignment of the Contract to ERG, (see

24   Compl. ¶ 13; Ans. ¶ 13).

25          In a memorandum to MTC from its Executive Director, dated September 12, 2002,

26   the Executive Director stated that although he was not prepared to provide an opinion to

27   MTC as to whether MTC should agree to assign the Contract to ERG, he recommended

28   that certain changes to the Contract be implemented, specifically, to expand the definition

                                              3

1   of "default" to "include the bankruptcy or insolvency of Motorola or ERG," to "tie

2   performance requirements to payment levels" which, in the Executive Director's view,

3   would "ensure[ ] continued accountability and responsiveness from Motorola/ERG," and to

4   "strengthen[ ] MTC's ability to manage the contract."  (See Def.'s Opp. Ex. B at 5-6.)  In

5   explaining his reasons for recommending the above-referenced changes to the Contract,

6   the Executive Director stated:

> While Motorola continues to be the prime contractor, without change in its
> obligations to MTC under the [C]ontract, its presence on the project (financing
> and staff) has been reduced to a nominal one.  Motorola and ERG have
> agreed that ERG will perform Motorola's duties and obligations under the
> project agreement as Motorola's agent, subject to limited supervision by
> Motorola.  Motorola relies on ERG to produce all project deliverables and
> ERG has provided various financial vehicles to guarantee its performance.
> These include backing up the performance bond and letter of credit furnished
> by Motorola to MTC under the [C]ontract.

12  (See id. at 3-4.)[5]

13      As of September 2002, MTC has dealt exclusively with ERG with respect to

14  discussing and addressing performance of the Contract and in negotiating change orders,

15  (see Ans. ¶ 57), MTC has paid invoices issued under the Contract directly to ERG, (see

16  Ans. ¶ 59), and Motorola has not prepared any invoices, (see Compl. ¶ 12; Ans. ¶ 12).

17  Motorola, however, has continued to sign change orders to the Contract and MTC has

18  directed correspondence relating to the Contract to Motorola.  (See Compl. ¶ 12; Ans.

19  ¶ 12.)

20      By Change Order dated January 22, 2003, the Contract was revised to include the

21  following provisions to the Contract:  "Any waiver of a default or of a requirement of the

22  Contract must be explicit and in writing.  Such a waiver by MTC shall not constitute a

23  waiver of any default or of such requirement in any other situation or circumstance," (see

24  Compl. Ex. A ¶ 1.4.3), and "[a]ny waiver, modification, or amendment of any provision of

25  the Contract shall be effective only if in a Change Order," (see id. ¶ 17.9).

26      On November 10, 2003, MTC and Motorola executed Translink Change Order

27  _____

28      [5]Neither party states whether the recommendations set forth in the Executive
    Director's letter were implemented.

4

1    Number CO-0045 ("Change Order 45"), which includes a release provision whereby MTC

2    released Motorola, identified therein as "Contractor," and ERG, identified therein as a

3    "subcontractor," from claims arising from or related to "the [ ] Contract or the performance

4    of work thereunder as of or prior to the Effective Date of [Change Order 45]"; the "Effective

5    Date" was November 10, 2003.  (See Pl.'s Mot. Ex. 3.)

6            On September 23, 2004, MTC and ERG met to discuss "alleged performance

7    problems," and did not invite Motorola to, or inform Motorola of, the meeting.  (See Ans.

8    ¶ 62.)  On another date,[6] MTC and ERG met with a mediator to address "alleged delays in

9    performance," and did not invite Motorola to, or inform Motorola of, the mediation.  (See id.

10   ¶ 63.)  On yet another date,[7] MTC and ERG met in Australia to discuss and address

11   "alleged delays in performance," and did not invite Motorola to, or inform Motorola of, the

12   meeting.  (See id. ¶ 64.)

13           In 1999, after Motorola was awarded the Contract, Motorola provided for the benefit

14   of MTC a letter of credit, issued by a bank, in the amount of $3,000,000; on December 31,

15   2004, that amount was decreased by the bank to $1,500,000.  (See id. ¶¶ 8, 77-78.)  In

16   February 2006, MTC objected to the decrease, (see id. ¶ 78), and requested that Motorola

17   supply an additional $1,500,000 letter of credit, (see id. ¶ 66).  ERG offered to post a

18   separate $1,500,000 letter of credit in MTC's favor from a creditworthy bank, but MTC

19   refused to accept such offer.  (See id. ¶¶ 14, 15.)

20                                    **LEGAL STANDARD**

21           Rule 12(c) of the Federal Rules of Civil Procedure provides in relevant part:  "After

22   the pleadings are closed but within such time as not to delay the trial, any party may move

23   for judgment on the pleadings."  See Fed. R. Civ. P. 12(c).  For purposes of a motion under

24   Rule 12(c), the allegations of the non-moving party are accepted as true, and the

25   allegations of the moving party that have been denied are presumed false.  See Hal Roach

26

27           [6]This date is not specified by Motorola.

28           [7]This date is not specified by Motorola.

1  Studios v. Richard Feiner & Co., 896 F. 2d 1542, 1550 (9th Cir. 1990).  "Judgment on the

2  pleadings is proper when the moving party clearly establishes on the face of the pleadings

3  that no material issue of fact remains to be resolved and that it is entitled to judgment as a

4  matter of law."  Id.

5       A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears

6  beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

7  entitle him to relief."  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Dismissal may be

8  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

9  under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F. 2d 696, 699

10  (9th Cir.1990).  In analyzing a motion to dismiss, the court must accept as true all material

11  allegations in the complaint and construe them in the light most favorable to the nonmoving

12  party.  See NL Industries, Inc. v. Kaplan, 792 F. 2d 896, 898 (9th Cir. 1986).

13                                    **DISCUSSION**

14       In its complaint, MTC seeks a declaration that Motorola remains obligated to perform

15  its obligations under the Contract, including its obligation to provide a $3,000,000 letter of

16  credit.  In its pleadings, Motorola seeks a declaration that it no longer has any obligation

17  under the Contract, for the reason that, according to Motorola, the "Contract has been

18  assigned and novated to ERG with MTC's approval," (see Ans. ¶ 66), or that Motorola's

19  performance has been fully excused as a result of MTC's having breached its duty of good

20  faith and fair dealing, (see id. ¶ 74); alternatively, Motorola seeks a declaration that, if it

21  otherwise remains obligated to perform under the Contract, Motorola's performance has

22  been partially excused, (see id. ¶ 85).

23  **I. Judgment on MTC's Complaint**

24       As noted, the Contract provides that although Motorola may assign work to a

25  subcontractor, Motorola remains responsible for such work, unless MTC agrees to relieve

26  Motorola from responsibility.  Further, the Contract provides that a waiver of a contractual

27  right, such as MTC's right to hold Motorola responsible for assigned contractual obligations,

28  must be in writing in a change order.  Because Motorola concedes MTC never agreed in

6

writing to relieve Motorola from responsibility for any of its assigned contractual obligations, MTC is entitled to judgment on its complaint, unless Motorola has alleged sufficient facts to support a finding that Motorola no longer is obligated to perform under the Contract or has otherwise established a defense.  Motorola has alleged seventeen defenses, which the Court considers in turn.

### A.  Failure to State Claim

In its First Defense, Motorola alleges, without elaboration, that the complaint fails to state a claim.  The Court finds the complaint alleges sufficient facts to state a claim for declaratory relief, specifically, a claim that in light of the express language of the Contract and Motorola's asserted denial of its obligations thereunder, MTC is entitled to a declaration that Motorola remains obligated to perform under the Contract.

### B.  Subject Matter Jurisdiction

In its Second through Fourth Defenses, Motorola alleges the Court lacks subject matter jurisdiction over the instant action as a result of, respectively, lack of standing, lack of a case or controversy, and lack of ripeness.  The Court finds MTC, as a party to the Contract, has standing to allege its claim for declaratory relief.  Further, the Court previously has found a case or controversy exists.  (See Order Denying Def.'s Mot. to Dismiss, filed July 19, 2006, at 2:1-9.)

### C.  Ratification/Approval

In its Fifth Defense, Motorola alleges MTC ratified or approved each act, taken or not taken by Motorola, of which MTC "now complains."  (See Ans. ¶ 26.)  The only specific act taken or not taken by Motorola of which MTC "now complains" is Motorola's failure to provide a letter of credit in the total amount of $3,000,000.  In that respect, Motorola provided a letter of credit in the amount of $3,000,000 until December 31, 2004, on which date the issuing bank reduced the amount to $1,500,000.  Because Motorola does not allege that MTC expressly ratified or approved such reduction by Motorola, and in fact alleges that MTC, in February 2006, expressly objected to the reduction, the Court construes the Fifth Defense as a claim that MTC implicitly ratified or approved the reduction

7

1    before February 2006.  Motorola's allegations are insufficient to support such a defense,

2    however.

3         As noted, the Contract requires that a waiver of a contractual right be set forth in a

4    written change order; Motorola does not allege such writing exists.  Although, as Motorola

5    points out, a provision of a contract requiring a writing can itself be waived, Motorola has

6    not alleged sufficient facts to support a finding MTC waived such provision.  Cf. Biren v.

7    Equality Emergency Medical Group, 102 Cal. App. 4th 125, 141 (2002) (holding parties

8    may waive provision requiring a writing, "where evidence shows that was their intent";

9    finding where contract included provision requiring that shareholders give consent in writing

10   before corporation could enter into agreement for billing services, provision was waived

11   where shareholders orally agreed to amend such provision to delete requirement of writing

12   and thereafter "took oral votes on billing company contracts").

13        **D.  Release**

14        In its Sixth Defense, Motorola alleges that MTC's claims have been released by

15   virtue of the release provision in Change Order 45.  Again, Motorola's allegations are

16   insufficient to support such a defense.

17        As noted, the subject release pertains to claims "as of or prior to" November 10,

18   2003.  (See Pl.'s Mot. Ex. 3.)  Motorola does not allege that at any time prior to November

19   10, 2003, Motorola failed to provide a letter of credit in the amount of $3,000,000, and,

20   indeed, alleges it did provide a letter of credit in the amount of $3,000,000 until December

21   31, 2004.  Similarly, Motorola does not allege that at any time prior to November 10, 2003,

22   Motorola refused to comply with its contractual obligation to be responsible for work

23   Motorola assigned to ERG or with any other contractual obligation, or that Motorola

24   informed MTC of its herein-asserted position that Motorola has no contractual obligations.

25        **E. Novation**

26        In its Seventh Defense, Motorola alleges Motorola and MTC "novated the [ ]

27   Contract whereby MTC intended to substitute and accept ERG's performance of the [ ]

28   Contract in lieu of Motorola."  (See Ans. ¶ 28.)

8

1    "Novation is the substitution of a new obligation for an existing one," and is made "by

2    the substitution of a new debtor in place of the old one, with intent to release the latter."

3    Manfre v. Sharp, 210 Cal. 479, 481 (1930) (internal citations and quotations omitted).  In its

4    Seventh Defense, the only specific act referenced by Motorola in support of a novation is

5    the parties' execution of Change Order 45.  That particular act, however, cannot, at least

6    without more, support a novation, because MTC and Motorola, in Change Order 45,

7    expressly referred to Motorola as the "Contractor" and ERG as a "subcontractor" of

8    Motorola.  Further, Motorola admits it has continued to sign change orders, which is

9    inconsistent with either party's having an intent that Motorola be released from all

10   obligations.

11       The only other facts alleged by Motorola that arguably pertain to MTC's having an

12   intent to substitute ERG for Motorola as the prime contractor are that MTC and ERG have,

13   in September 2004 and on other dates not identified by Motorola, met to discuss

14   performance issues, without notifying or inviting Motorola.  Given that Motorola had

15   previously assigned its work-related obligations to ERG, it is not surprising that MTC would

16   contact ERG directly with respect to work-related issues.  In any event, Motorola does not

17   allege that any substantive modification of the Contract was agreed to at any such meeting,

18   and even if an allegation to that effect could be implied, Motorola has alleged it continues to

19   sign change orders, and does not allege ERG signed any.

20       In sum, Motorola's allegations are insufficient to support the defense asserted.

21   **F.  Express Assignment/Delegation**

22       In the Eighth Defense, Motorola alleges MTC "approved expressly" Motorola's

23   request to assign all of Motorola's contractual obligations to ERG.  (See Ans. ¶ 29.)

24   Similarly, in the Ninth Defense, Motorola alleges MTC "expressly approved" Motorola's

25   request to delegate all of Motorola's contractual obligations to ERG.  (See id. ¶ 30.)  As

26   noted, the Contract expressly provides that the waiver of a contractual right, such as MTC's

27   right to have Motorola continue as the party responsible for all assigned or delegated work,

28   must be in writing.  Motorola alleges MTC never approved Motorola's written request for an

9

1  assignment of all of its contractual obligations to ERG, either in writing or orally.

2  Consequently, Motorola's allegations are insufficient to support its Eighth and Ninth

3  Defenses.

4  ### G.  Acceptance of Reduced Letter of Credit

5  In the Tenth Defense, Motorola alleges MTC "accepted" Motorola's $1,500,000 letter

6  of credit and, consequently, "lacks, or has waived" any right to require that Motorola post a

7  $3,000,000 letter of credit.  (See id. ¶ 31.)  For the reasons stated above with respect to the

8  Fifth Defense, Motorola's allegations are insufficient to support this defense.

9  ### H.  Failure to Accept ERG's Proffered Performance

10  In the Eleventh Defense, Motorola alleges MTC "lacks any contractual basis" for

11  refusing to accept a $1,500,000 letter of credit from ERG.  (See id. ¶ 32.)  As noted, the

12  Contract requires Motorola to provide a $3,000,000 letter of credit.  To the extent Motorola

13  may be alleging that ERG's offer to provide the $1,500,000 letter of credit that Motorola has

14  not provided constitutes a request, either by Motorola or ERG or both, that MTC allow

15  Motorola to assign part of its letter-of-credit obligation to ERG, Motorola points to no

16  contractual provision that would require MTC to approve such assignment.

17  ### I.  Motorola' Exit from Transit Smartcard Business

18  In the Twelfth Defense, Motorola alleges that because it has exited the "transit

19  smartcard business," and ERG has been performing Motorola's work under the Contract,

20  MTC's complaint is "barred by the doctrine of waiver, laches, and impossibility of

21  performance."  (See Ans. ¶ 33.)  Motorola's allegations are insufficient to support any such

22  defenses.

23  First, with respect to waiver, the Contract expressly provides that Motorola may

24  assign its work under the Contract to a subcontractor, and Motorola fails to plead any facts

25  that could support a finding that Motorola's unilateral decision to "exit" the transit smartcard

26  business effectuates a "waiver" on the part of MTC.  Second, with respect to laches,

27  Motorola does not allege its exit from the transit smartcard business was an act that could

28  give rise to a claim for breach of contract, and, more importantly, MTC does not allege such

1   act constitutes a breach; consequently, there are no allegations suggesting MTC has

2   unreasonably delayed bringing such a claim.  See Ragan v. City of Hawthorne, 212 Cal.

3   App. 3d 1361, 1368 (1989) (holding "unreasonable delay" in bringing claim is essential

4   element to establish defense of laches).  Third, assuming Motorola's unilateral decision to

5   exit the transit smartcard business could ever support an "impossibility" defense, Motorola

6   fails to allege any facts to support a finding that the obligations at issue herein, specifically,

7   providing financial guarantees to MTC and being responsible for work performed by

8   subcontractors, are tasks requiring MTC to itself provide transit smartcard services.

9   Indeed, Motorola represented, in its September 9, 2002 letter to MTC, a date more than a

10   year and half after Motorola had exited the transit smartcard business, that it would

11   continue to provide "supervision" over ERG's performance, (see Pl.'s Mot. Ex. 2 at 1);

12   Motorola does not allege that it somehow became "impossible" for it continue to so perform

13   at some point after September 9, 2002.

14          **J. Unclean Hands**

15          In the Thirteenth Defense, Motorola alleges MTC is not entitled to relief because

16   MTC has "unclean hands."  (See Ans. ¶ 34.)  In support of this defense, Motorola alleges

17   MTC breached the covenant of good faith and fair dealing by not consenting to an

18   assignment of the Contract to ERG and by delaying in informing Motorola of MTC's position

19   with respect to Motorola's request for such assignment.

20          Under the doctrine of "unclean hands," the "doors of a court of equity" are "closed" to

21   a plaintiff "tainted with inequitableness or bad faith relative to the matter in which he seeks

22   relief," so long as the plaintiff's "misconduct . . . relate[s] directly to the transaction

23   concerning which the complaint is made, i.e., it must pertain to the very subject matter

24   involved and affect the equitable relations between the parties."  See Vacco Industries, Inc.

25   v. Van Den Berg, 5 Cal. App. 4th 34, 52 (1992) (holding, where plaintiff wrongfully

26   terminated defendant's employment, plaintiff's conduct did not bar plaintiff's claim for

27   misappropriation of trade secrets because defendant's termination had "nothing to do with

28   his obligation" not to engage in misappropriation).  As discussed below with respect to the

1   Fifteenth Defense, Motorola's allegations are insufficient to support a claim that MTC

2   breached the covenant of good faith and fair dealing.  Consequently, even assuming,

3   arguendo, a plaintiff's breach of the covenant of good faith and fair dealing can constitute

4   the type of inequitable conduct that bars the plaintiff from seeking any relief under a

5   contract, Motorola's allegations are insufficient to support the defense asserted.

6       **K.  Accord and Satisfaction**

7       In the Fourteenth Defense, Motorola alleges MTC's claims are barred by an "accord

8   and satisfaction."  (See Ans. ¶ 35.)  Motorola includes therein no facts to support such an

9   allegation.  To the extent this defense is based on Change Order 45, Motorola's allegations

10  are insufficient to support such defense for the reasons stated above with respect to the

11  Sixth Defense.

12      **L. Excuse**

13      In the Fifteenth Defense, Motorola alleges MTC failed to perform "obligations" owed

14  to Motorola under the Contract, thereby excusing Motorola from performing any obligations

15  thereunder.  (See Ans. ¶ 36.)  No facts to support this defense are set forth in the answer.

16  In its opposition, Motorola appears to assert this defense is based on the theory that after

17  Motorola exited the transit smartcard business, MTC had a duty to "properly consider"

18  Motorola's request to be relieved of all duties under the Contract, in light of MTC's lack of

19  objection to Motorola's decision to exit such business.  (See Def.'s Opp. at 18:2-4, 18:27 -

20  19:3.)[8]  If, in fact, such theory is the basis of the Fifteenth Defense, the answer does not

21  identify an express contractual provision requiring such a duty.  With respect to an implied

22  duty, although California law provides that "where a contract confers on one party a

23  discretionary power affecting the rights of the other, a duty is imposed to exercise that

24  discretion in good faith and in accordance with fair dealing," see California Lettuce

25  Growers, Inc. v. Union Sugar Co., 45 Cal. 2d 474, 484 (1955), the answer does not identify

26  

27          [8]In the cited portion of its opposition, Motorola refers to Count III, a counterclaim in
28  which Motorola alleges it is excused from performance as a result of MTC's having
    breached its implied contractual duties to Motorola.

1   a provision in the Contract whereby MTC has discretion to assign the Contract.[9]  In any

2   event, even assuming MTC has a duty, express or implied, to consider in good faith

3   Motorola's request for an assignment of the Contract, Motorola fails to explain why MTC's

4   lack of objection to Motorola's decision to exit the smartcard business bears on such duty;

5   as noted, Motorola fails to allege any facts to support a finding that the obligations at issue

6   herein, specifically, providing financial guarantees to MTC and being responsible for work

7   performed by subcontractors, are tasks requiring MTC to itself provide transit smartcard

8   services.

9         Accordingly, Motorola's allegations are insufficient to support the defense asserted.

10        **M.  Unreasonable Delay**

11        In the Sixteenth Defense, Motorola alleges MTC "unreasonably and unjustifiably

12  delayed filing [the instant] action," and, consequently, MTC's claims are barred by the

13  "statute of limitations, laches, waiver and/or estoppel."  (See Ans. ¶ 37.)

14        "A declaratory judgment offers a means by which rights and obligations may be

15  adjudicated in cases 'brought by any interested party' involving an actual controversy that

16  has not reached a stage at which either party may seek a coercive remedy and in cases

17  where a party who could sue for coercive relief has not yet done so."  See Seattle Audubon

18  Soc. v. Moseley, 80 F. 3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201).

19        Here, with respect to Motorola's failure to provide a $3,000,000 letter of credit, MTC

20  could have sued for coercive relief, at the earliest, on December 30, 2004, when Motorola

21  failed to perform.  Because the instant action was filed on March 30, 2006, well within the

22  applicable four-year statute of limitations, see Cal. Code Civ. Proc. § 337(1) (providing four-

23  year statute applicable to claim for breach of written contract), Motorola cannot establish its

24  _____

25        [9]In its opposition, Motorola refers to the following provision in the Contract: "Should
26  [the] roles and responsibilities of [MTC and Motorola] require further definition or revision,
    the parties intend to negotiate in good faith, consistent with their respective roles and
27  responsibilities, to provide such definition."  (See Compl. Ex. A § G.)  If it is Motorola's
    position that its request for an assignment of the Contract constitutes a request for a
28  "further definition or revision," Motorola, as noted, has not included an allegation to such
    effect in its pleadings.

13

1   defense that such claim for declaratory relief is barred by the statute of limitations.

2       As to the other contractual obligations at issue herein, specifically, Motorola's duty to

3   supervise ERG and to provide performance and payment bonds, MTC has not alleged that

4   Motorola has failed to perform such obligations, or any other work that Motorola has not

5   previously assigned to ERG.  Thus, to the extent MTC's claim seeks a declaration as to

6   MTC's contractual rights with respect to such continuing obligations, such claim "has not

7   reached a stage at which either party may seek a coercive remedy."  See Seattle Audubon

8   Soc., 80 F. 3d at 1405.  It necessarily follows that Motorola's allegations are insufficient to

9   support a defense that any such claim is barred by the four-year statute of limitations

10   applicable to a claim based on breach of a written contract.

11       Finally, Motorola's allegations are insufficient to support a finding of laches, waiver

12   or estoppel based on the timing of the instant complaint, which complaint was filed slightly

13   more than a year after the commission of the first act alleged by MTC to constitute a

14   breach of contract.

15      **N.  Waiver**

16       In its Seventeenth Defense, Motorola alleges MTC's claims are barred by the

17   "doctrine of waiver."  (See Ans. ¶ 38.)  As discussed above, Motorola has asserted other

18   affirmative defenses based on "waiver," specifically, the Twelfth and Sixteenth Defenses.

19   The Seventeenth Defense, which is not alleged to be based on any allegation differing from

20   those that support the Twelfth and Sixteenth Defenses, likewise is insufficient.

21   **II. Motion to Dismiss Counterclaims**

22       In its Answer and Counterclaims, Motorola asserts four counterclaims, which the

23   Court next considers.

24      **A.  Count I**

25       In Count I, Motorola seeks a declaration that MTC and Motorola "novated" the

26   Contract, such that MTC has agreed to "substitute[ ] ERG in lieu of Motorola to perform the

27   [ ] Contract, and released Motorola from all obligations under the [ ] [C]ontract."  (See id.

28   ¶ 68.)  For the reasons stated above with respect to the Seventh Defense, Motorola has not

1    pleaded sufficient facts to support a finding of entitlement to such declaration.

2        **B.  Count II**

3        In Count II, Motorola seeks a declaration that MTC consented to the "assignment or

4    delegation" of all of Motorola's contractual duties to ERG, such that "Motorola no longer has

5    any obligations under the [ ] Contract, or any obligation to guarantee performance of that

6    Contract."  (See id. ¶ 70.)  For the reasons stated above with respect to the Fifth, Eighth

7    and Ninth Defenses, Motorola has not pleaded sufficient facts to support a finding of

8    entitlement to such declaration.

9        **C.  Count III**

10       In Count III, Motorola seeks a declaration that MTC has breached the Contract's

11   implied covenant of good faith and fair dealing by not approving Motorola's request that the

12   Contract be assigned to ERG.  For the reasons stated above with respect to the Fifteenth

13   Defense, Motorola has not pleaded sufficient facts to support a finding of entitlement to

14   such declaration.

15       **D.  Count IV**

16       In Count IV, Motorola seeks declaratory relief specific to its duty to provide

17   performance and payment bonds, in particular, a declaration that it is excused from having

18   to continue to provide such bonds in any amount or, alternatively, that it is entitled to

19   provide such bonds in an amount less than the amount set forth in the Contract.  (See

20   Compl. Ex. A ¶ 3.2 (requiring Motorola to provide "Performance and Payment Bonds," each

21   such bond being in the amount of $40,000,000, with "a term ending 90 days following the

22   last day of the period allowed hereunder for the achievement of Final Acceptance of Phase

23   II").)

24       Motorola alleges that MTC, as of January 22, 2003, has "issued nearly fifty change

25   orders to the [ ] Contract," and that such change orders have "materially chang[ed] the

26   amount of work originally anticipated under the Contract, materially extend[ed] the

27   anticipated time of performance for completing Phase II, and materially prolong[ed] the

28   intended time period for maintaining the $40 million payment and performance bonds."

1    (See Ans. ¶ 85.)  According to Motorola, such change orders have "result[ed] in a cardinal

2    change" that excuses Motorola from having to continue to provide the subject bonds.

3         A "cardinal change" is a breach of contract that occurs "when the government effects

4    an alteration so drastic that it effectively requires the contractor to perform duties

5    material[ly] different from those originally bargained for."  See Allied Materials & Equipment

6    Co. v. United States, 569 F. 2d 562, 563-64 (Ct. Cl. 1978).  The doctrine "appl[ies]

7    generally to modifications which are so fundamental that they cannot be redressed within

8    the contract by an equitable adjustment to the contract price" or, stated otherwise, are "so

9    profound that [the modifications are] not redressable under the contract."  See id. at 564.

10        As MTC points out, California courts have not addressed the question of whether

11   California should adopt the cardinal change doctrine; in its opposition, Motorola fails to

12   advance any argument to support its implicit contention that the California Supreme Court

13   would adopt such doctrine if presented with the issue.  See United States v. Colin, 314 F.

14   3d 439, 443 (9th Cir. 2002) (holding, in diversity case applying California law, where

15   California Supreme Court has not ruled on an issue of law, federal court must "predict" how

16   state court would rule "in light of California appellate court opinions, decisions from other

17   jurisdictions, statutes, and treatises").

18        In any event, Motorola fails to allege sufficient facts to support such defense.  The

19   alleged "cardinal change" is that Motorola is being required to provide performance and

20   payment bonds for a period longer than originally anticipated.  Motorola has not alleged,

21   however, the period of time, if there was one, that the parties originally anticipated Phase II

22   to last, nor has Motorola alleged facts showing such changes cannot be redressed under

23   the Contract, in the form of additional compensation or otherwise.

24   **III. Leave to Amend**

25        After granting a motion to dismiss or a motion for judgment on the pleadings, a

26   district court should afford the non-prevailing party the opportunity to amend its pleading,

27   unless leave to amend would be futile.  See Steckman v. Hart Brewing, Inc., 143 F. 3d

28   1293, 1298 (9th Cir. 1998) (citing "general rule" that leave to amend following dismissal of

16

1    pleading should be afforded unless "any amendment would be an exercise in futility"); see,

2    e.g., Lopez v. General Motors Corp., 697 F. 2d 1328, 1329 (9th Cir. 1983) (discussing

3    procedural history in district court; noting district court granted motion for judgment on

4    pleadings with leave to amend).  Here, Motorola has not previously amended its answer

5    and/or counterclaims, and the Court cannot conclude that it would futile to afford Motorola

6    the opportunity to amend to cure the deficiencies set forth above.  Accordingly, leave to

7    amend will be granted.

8                                          **CONCLUSION**

9            For the reasons stated above, MTC's motion for judgment on the pleadings is

10   hereby GRANTED, Motorola's Counterclaims are hereby DISMISSED, and Motorola is

11   hereby afforded leave to amend its Answer and Counterclaims.  The Amended Answer and

12   Counterclaims, if any, shall be filed no later than February 23, 2007.

13           **IT IS SO ORDERED.**

14

15   Dated: January 31, 2007

16                                                          MAXINE M. CHESNEY
                                                           United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                                17